"United States District Court"
Western District of New York

United States of America

V.

Case No: CR-92-00019T
Reg No: 01925-055

Dominic J. Taddeo, Jr

Motion For Compassionate Release due to Extraordinary and compelling circumstance Pursuant to 18 U.S.C. § 3582 (c)(1)(A)(i) And/or 12003 (b)(2) of the Cares Acted Passed into Law on March 27, 2020.

Comes Now, Defendant, Dominic J. Taddeo, Jr Pro-se Respectfully Requesting to have his sentence Reduced or modified Pursuant to title 18 U.S.C. 3582 (c)(1)(A)(i) and/or 12003 (b)(2) of the Cares Act, Passed into Law on March 27, 2020, this court has broad discretion to Reduce or modify the Defendants sentence to minimize his Exposure of contracting the Novel Zoonotic highly dangerous Corona-virus, Also know as COVID-19 Pandemic.

Movant is Requesting Compassionate Release, under the First Step Act, due to circumstance Defendant is (63) years old, He Been in Prison for "32 Year's" (since 3-12-1989) He is due to be release in 2 years on (2-10-2023). Defendant is Request a Reduction of sentence Due to his medical condition, He suffer from Hypertension, Anemia, Blindness in Right Eye and Low Vision in the Left Eye, Enlarged Prostate with Lower Urinary tract symptoms, Esophageal Reflux, Obesity, Depressive Disorder, Muscle spasm's. COVID-19 is more Easily transmitted and has a Prevalent community spread. Defendant Also has his Mother which is "84 Years old", who is struggling to maintain her Independence to stay out of a Nursing home, and she need's all the help she can Receive from her son. The Defendant has had clear Conduct for over "20 Years", the Defendant has Rehabilitated fully, and Poses no Danger to the community or anyone. The Defendant request that this court look to the recent decision Granting compassionate Release, where it's noted that the one's interpretation of the statutory requirement, to provide Just Punishment, 18 U.S.C. § 3553(a), must be recalibrated to take into account the unanticipated impacts of the Pandemic on those who are in custody.

Movant also asserts that B.O.P is not adequately equipped or prepared to safety and effectively manage the COVID-19 Pandemic. Movant is not able to abide by the CDC Guideline for COVID-19. Movant is possibly being exposed to a death sentence due to circumstances beyond his control, circumstances that can dramaticly improve with compassionate Release. Augmenting an already phenomental claim for compassionate Release is a release plan that will allow the movant the honor of atoning for actions that reach far beyond the instant case. For the reasons stated aboved, the court should exercise its discretion under 3582(c)(1)(A)(i) to grant the Movant compassionate Release to serve the Reminder of his sentence on Probation or supervised Release, which ever the court deems Proper. In Doing so, the BOP Denied the Defendant the opportunity to argue the BoP's failure to provide a safe enivornment as a Relavent 3553(A) factors, as other courts have Done. United States v. Edwards, No. 6:17-cr-3-NKM, DKT.NO.134 (April 2, 2020). Granting Compassionate Release.

BOP's inability to provide adequate medical attention for an infectious disease COVID-19 virus, while the BOP may have began planning for the potential transmission of the extremely dangerous COVID-19 virus in January 2020. The Administrative At Coleman Medium, was not up for task when a deadly virus possibly COVID-19 swept through the prison in February of 2020, leaving at lease (2) dead and countless other inmates to be hospitize.

The virus was highly contagious, As the virus was contracted by hundreds of inmates, Despite the fact as of this date not one imate has been tested for the extremely dangerous COVID-19 virus. In April 3, 2020 memorandum to the Director of the BOP, Attorney General William Barr, once again expressed the urgency in getting At risk inmates approved for Home Confinement. In that memorandum A.G. Barr, acknowledged the fact that not All Federal Prisons have been effective in containing the spread of the COVID-19. The concerns expressed by A.G William Barr, has been Recognized by the District Courts around the Nation and has Prompted the Release of federal inmates due to the Novel COVID-19 virus, Despite the measures being taken by the B.O.P. <u>United states v. Muniz</u>, No. 4:09-cr-199, DKT.No.578 (S.D.N.Y. Tex Mar, 30, 2020) Releasing Defendant serving 188 months sentence for Drug Conspiracy in Light of Vulnerability to COVID-19 Pandemic.

United States V. Bolston, No. 1:18-cr-382-MIB, DKT. (No. 20) (M.D. GA March 30, 2020) Releasing Defendants in part because the danger inherent in his continued incarceration at the R.A. Deyton Detention Facility.

United State V. Perez, Case No: 1:17-cr-513-At. DKT. No. 98 (S.D.N.Y April 1, 2020) Granting Compassionate Release where the benefits of keeping (Perez) in prison for the Reminder of his sentence are minamal, and the potential consequences of doing so are Extraordinary Grave.

United States V. Stephens, 2020 WL 1295155, ___ F. Supp. 3d (S.D.N.Y. Mar 19, 2020) Releasing Defendants in light of the unprepared and extraordinary dangerous nature of the COVID-19.

United States V. Rodriguez, No: 2:03-cr-271-AB, DKT. No. 135 (E.D.P.A. April 1, 2020).

United States V. Hernandez, Case No. 16-cr-20091-KMW, E.C.F No. 561 (S.D. FLA April 3, 2020) Granting compassionate Release to Defendant in light of COVID-19 Virus... "What should not be over looked is that Prisons and Jails face the same Risk as cruises ships and Nursing homes when dealing with COVID-19 Pandemic..."

"A REDUCTION UNDER 18 U.S.C 3582(c)(1)(A)(i) IS WARRANTED:"

What should not be overlooked, is that the death rate for the severly dangerous COVID-19 virus increase substantially for those age 50 and older. SEE http://theconversation.com/why-are-older-people-more-at-risk-of-coronavirus-133770. And that, men are faring worse than women during this COVID-19 Pandemic according to statistics emerging around our nation and the world. SEE httpl:latimes.com/science-story-2020-03-21/why-is-the-coronavirus-more-deadly-for-men-than-for-women. Indeed, of friday, march 20, 2020, the white house COVID-19 Task Force Director Dr. Deborah Brix "cited a report from Italy showing that men in nearly every age bracket were dying at higher rates than age bracket then women." (Id). Moreover the Los Angeles Notes that an "analysis of all COVID-19 patient profiles in china from December 2019, to Febraury 2020 suggest[ed] that men account[ed] for roughly 60% of those who are infected and become sick." (Id). In additional, the LA times noted "in a detailed accounting of 44,600 cases in Mainland china as feb 11, china's center for Disease control reported that fatally rate among men with confirmed infections was roughly 65% higher than it was among women".

The centers for Disease control and Prevention ("CDC") has recognized that correctional facilities "Present unique challenges for the control of COVID-19 transmission among incarcerated Persons, staff, and visitors" Because many detention condition create a heightened risk of Danger to

6.

on-site medical staff, highly congregational enviornment, inability of most patients to leave the facilities, and limited ability of incarcerated person to exercise effective disease prevention person measure (e.g., social distance and frequent hand washing). There are the exact condition faced by the Defendant at Coleman Correctional Complex. In an affidavit date March 27, 2020 Professor Brie Williams, M.D. has expressed the same concerns that now plague Coleman Correctional Complex. SEE Exhibit B, copy of affidavit attached. In her affidavit, Professor Williams points out, that the potential for the spread of the highly dangerous COVID-19 virus is extremely high in jails and prisons as [h]undreds of thousands of correctional officers and correctional health-care workers enter these facilities every day, returning to their families and to our communities at the end of their shifts, bringing back and forth to their families and neighbors and to incarcerated patients any exposures they have had during the day. Access to testing for correctional staff has been "extremely limited", guards have reported a "short supply" of protective equipment, guards and prisons are not routinely or consistenly screening correctional officers for symptoms." In another affidavit dated March 13, 2020, Dr. Jonathan Louis Golob, explains the severity of the extremely dangerous COVID-19 virus in victims over 50 years of age SEE Exhibit C".

In this adffidavit, Dr. Golob states that, "COVID-19 makes certain populations of people severely ill." People over the age of fifty are at higher risk, with to those over 70 at serious Risk. There has been a growing public health consensus that the BoP must rapidly decarcerate to prevent a catastrophe of epic proportions in prisons and jails. In fact, on march 27, 2020, a group of public health officials from this country's top public health and medical institutions sent a letter to the President, explaining that effective COVID-19 mitigation is "impossible to achieve in our federal prisons and immigration facilities," and urging rapid decarceration. These Experts ominously noted that prisons and jails face the same risk as cruises ships and nursing homes when dealing with the COVID-19 Pandemic." (Id). As stated in Professor Brie William's affidavit, the BoP's own staff tell a similar story. Particulary disturbing is reporting indicating that the BoP's chief Health officer has advised officers to continue working even if expose to COVID-19, as long as they remain asymptomatic. This only further accelerates the risk of COVID-19 spreading like wildfire inside jails and prisons. For Example of this fact, on may 19, 2020 segment of the Rachel Maddow news show on MSNBC, its was reported that 3 prisons in ohio had a positive test rate at over 75% of the inmates testing positive for COVID-19, before

the state cancelled its testing process. As of that date, the state has reported 61 prisoners and 4 staff member have died from the extremely dangerous COVID-19 virus.

As of April 27, 2020 the number of inmates in the BOP system who have tested positive for COVID-19 was 1,046 with 390 recovery 330 BOP staff with 124 recovered and 28 inmates deaths (https://www.bop.gov/coronavirus/). A total of 49 BOP Facilities are affected nationwide. Id. COVID-19 has spread to Coleman Correctional Complex with the BOP now reporting that there is one staff member who has tested positive at both FCI Coleman-Low and FCI Coleman-Medium where the Defendant is housed. Because the pandemic threatnes the capabilities of the prison system itself, and with the Defendant being in an at-Risk-category (African American with Asthma). The Defendant's case Prentsent Extraordinary and compelling reason to grant the requested Relief. SEE Exhibit "A", Copy of Attorney General William Barr's April, 3, 2020 memorandum ("[a]ll inmates who have COVID-19 Risk factors, as establish by the CDC should be immediatety reviewed for their suitability as candidates for home confinment").

III). Legal framework:

Under 18 U.S.C. 3582 (c)(1)(A), this court may, in certain circumstances, Grant a Defendants motion to Reduce his or her term imprisonment. Before filing that motion, however the first request that BOP file such a motion on his or her behalf.

9.

3582(c)(1)(A). The Defendant has made such a request for the BOP to file such motion and the BOP has refuse to do so. While in the normal case, a Defendant would need to exhaust his administrative remedies before filing a motion before the Court. However the outbreak of the severly dangerous COVID-19 virus and the high possibility of contracting the virus in prison, presents a serious national emergency that would allow an excuse compliance with the normal Exhaustion Rules. Hendricks V. Zenon, 933 F.3d.644, 672 (9th cir, 1993) (recognizing that exceptional circumstances of peculiar urgency can excuse exhaustion. Delaying consideration of this motion would put Justin's life in danger and risk irreparable harm):

United States V. Colvin, No. 3:19-cr-179 (JBA), 2020 U.S. Dist. Lexis 57962, *4-5 (D. Conn. April 2, 2020) " First, exhaustion may be unnecessary where it would be futile, either because agency decision makers are biased or because the agency has already determine the issue".)

In December 2018, congress enacted the first step Act (FSA) which modified Title 18 of the 3582 (c)(1)(A)(i), a court may modify a term of imprisonment if it founds that:

(i) Extraordinary and compelling reason warrant such a reduction, or...

As many district courts have noted post-First Step Act, "Congress has not specified the

10.

circumstances that qualify as "Extraordinary and compelling reason" except to state that a reduction pursuant to this provision must be "consistent" with applicable policy statement issued by the sentencing commission.

Likewise, any failure to exhaust for a sentence reduction request under 3582(c)(1)(A)(i) should also be excused where the warden at coleman complex advised that such request should be made with the sentencing court, since the BoP Has "No" authority to reduce a sentence. SEE Exhibit "E".

United States V. Bucci, No. CR-04-10194-WGY, 2019 WL5075964, at *1 (D. Mass. Sept 16, 2019). The applicable Policy statement of the sentence commission can be found at U.S.S.G 1B1.13, which its commentary states:

1) Extraordinary and compelling reasons. - Provided the Defendant meets the requirements of sub-division (2) [Not] (A Danger to society), Extraordinary and compelling reasons exist under any of the circumstances set forth below:

2). Other Reasons. As determined by the Director of the Bureau of Prisons, there exists in the Defendant's case an Extraordinary and compelling Reason other than, or in combination with the reasons described in sub-divisions (A) through (C). SEE U.S.S.G §1B1.13..

Since the enactment of the First STEP ACT, district courts across the country have found and given various meaning to the term "Extraordinary and Compelling." See e.g.,
United States v. Ebbers, No, 5 402CR11443 VEC, 2020 WL 91399 (S.D.N.Y Jan 8, 2020) (The rapid declined [in health] coupled with ebbers age Present Extraordinary and Compelling reason").
United States V. Urkevich, No, 03 CR37, 2019 WL 6037391 (D.Neb. Nov, 14, 2019) (concluding that the stacking provision of 18 U.S.C. 924(k) constitutes Extraordinary and compelling Reason for reduction in sentence after the First step ACT: whether Extrordinary and Compelling reason warrant a sentence reduction in a particular case.
United States V. Da Cai Chen, 127 F.3d. 286, 291 (2nd cir. 1997) (commentary that relates to a statutes, or to a guidelines that mirrors a statute (as here), is not entitled to deference). while originally it was the BOP that must request a motion to request a reduction in sentence under 1B1.13, congress removed the BOP's Blessing as a prerequisite to relief when enacting 3582 (c)(1)(A)(i) of the first STEP ACT.

As demonstrated Above, In amending the language of 3582 (c)(1)(A), congress has finally empowered courts to make the critical determination of whether a sentence reduction is warrant, even in the face of the BOP determination that A defendant's case is no Extraordinary or compelling:

## CONCLUSION

For the foregoing reasons, this court should find that the instant motion should be granted in the interest of justice.

RESPECTFULLY SUBMITTED:

*Dominic J. Taddeo Jr.*
DOMINIC J. TADDEO, JR
Reg No: 01925-055
FCI Coleman - med vim
P.O. Box 1032
Coleman, FL. 33521

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing motion has been sent to the OFFICE OF the AUSA, at 620 Federal Building 100 state street Rochester, New York 14614, on this date, December 2, 2020.

\* *Dominic J. Taddeo Jr.*
DOMINIC J. TADDEO, JR
Reg no: 01925-055